ANONYMOUS, Plaintiff-Appellant,

v.

ANONYMOUS, Defendant-Appellee.

No. 743, Docket 76–7555.

United States Court of Appeals,
Second Circuit.

Argued April 18, 1977.

Decided July 20, 1977.

Malcolm H. Bell, Norwalk, Conn., for plaintiff-appellant.

Mark H. Alcott, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Steven E. Landers, New York City, of counsel), for defendant-appellee.

Before MOORE, SMITH and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

This case involves the extent to which the wiretap provisions of the Omnibus Crime Control and Safe Streets Act of 1968 (the "Act"). 18 U.S.C. §§ 2510–2520, apply to interspousal wiretaps used in preparation for divorce litigation. The issue is one of first impression in this Circuit, although it has recently arisen in both the Fifth and Sixth Circuits. *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); *United States v. Jones*, 542 F.2d 661 (6th Cir. 1976).

From the extensive discussion of legislative history in those two cases, it appears fairly clear that although Congress's primary concern in enacting the wire interception provisions of the Act was with organized crime, Congress was not unaware of the growing incidence of interspousal wiretaps, and did not intend to blanketly except them from the Act's coverage. The issue becomes at what point interspousal wiretaps leave the province of mere marital disputes, a matter left to the states, and rise to the level of criminal conduct proscribed by the federal wiretap statutes. The issue arises here in the context of a civil damage action brought pursuant to 18 U.S.C. § 2520[1] by a woman against her ex-husband. For the reasons below, we conclude that the facts alleged here do not rise to the level of criminal conduct intended to be covered by the federal wiretap statutes, and hence we affirm the dismissal of the complaint.

I.

The plaintiff-appellant and the defendant-appellee in this case were married in 1958, had a son in 1960 and a daughter in

---

1. 18 U.S.C. § 2520 provides in part as follows:

"Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications . . . ."

1965. They separated in 1972 and due to appellant's unstable mental condition at the time, the two children were temporarily placed in the custody of their father. During the next two years, various disputes arose which took the parties in and out of the state courts. Late in 1973, appellant abducted her daughter, taking her to Florida. When appellant returned to New York, she was arrested and her visitation rights were suspended. Shortly thereafter, the Family Court issued an order directing appellant to refrain from using foul and abusive language over the telephone to her husband and children. On October 2, 1974, the parties were divorced and within the next year, custody of the daughter was transferred to appellant.

Appellant subsequently brought this action in the United States District Court for the Southern District of New York, alleging that during the two years preceding the divorce, her husband had intercepted and taped her telephone conversations with their daughter, in violation of 18 U.S.C. § 2511.[2] At the time of the alleged interceptions, the parties' daughter was eight years old and was residing with and in the exclusive custody of her father.

The mode of interception was as follows: appellee had purchased at a local retail store one of the newly popular automatic telephone answering machines, and had plugged it into the standard Telephone Company jack in his apartment. The machine answered the phone and then played a recording of appellee's voice, stating that the caller had 45 seconds in which to identify himself and leave a message. A loudspeaker attached to the machine permitted the people in the apartment, if any, to hear the caller identify himself. Appellee asserts in his affidavit in support of his motion to dismiss the complaint that his purpose in installing this answering machine was to avoid speaking to his wife when she telephoned the children at his apartment. If appellant was heard identifying herself over the machine, one of the children, rather than appellee, would pick up the phone.

Whether or not someone picked up on appellee's end, the machine normally shut off automatically after 45 seconds. Appellant alleged, however, that appellee had instructed their son to turn a knob marked "Record" on the machine whenever his mother called, thus surreptitiously taping her conversations beyond the 45 second period. If appellee was at home, the loudspeaker arrangement enabled him to hear the conversations in another room.[3] If he was not at home, he could later play back the recordings of the conversations. Appellant alleged that appellee intended to use these tapes against her in a later custody fight.

## II.

Appellee's activity would clearly not be prohibited if it consisted merely of listening into his wife's and daughter's telephone conversations from an extension phone in his apartment. Congress explicitly exempted such activity from coverage by the Act. See 18 U.S.C. § 2510(5)(a)(i).[4] Such a use of

2. 18 U.S.C. § 2511 provides in part as follows:
"(1) Except as otherwise specifically provided in this chapter any person who—
(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication; * * *
shall be fined not more than $10,000 or imprisoned not more than five years, or both."

3. Appellee had been prohibited, by court order, from being in the same room with the children while they spoke to appellant on the telephone.

4. The activity made unlawful by 18 U.S.C. § 2511 is the "interception" of a wire or oral communication. See n.2, supra. "Intercept" is

defined in 18 U.S.C. § 2510(4) as "the aural acquisition of the contents of any wire or oral communication *through the use of any electronic, mechanical, or other device.*" (Emphasis added).
18 U.S.C. § 2510(5)(a)(i) provides:
"(5) 'electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire or oral communication other than—
(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business . . . .."

an extension phone in appellee's own home would certainly be in the "ordinary course of [the user's] business". 18 U.S.C. § 2510(5)(a)(i). The latter language was added to the House bill after Professor Herman Schwartz testified for the A.C.L.U. before the House Judiciary Committee that he feared that the original version of the bill, which had no such language, would permit policemen and private intruders to enter others' homes and listen in on extension phones without penalty. Professor Schwartz did not, however, recommend deleting the extension phone exemption entirely. He stated: "Now, we can see in certain circumstances where [the exemption] makes some sense. I take it nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem". Hearings on the Anti-Crime Program Before Subcomm. No. 5 of the House Judiciary Comm., 90th Cong., 1st Sess. 901 (1967).

The case before us presents just such a problem, and we, like Professor Schwartz, assume that "nobody wants to make it a crime" for a father to listen in on conversations between his wife and his eight year old daughter, from his own phone, in his own home.[5] The fact that appellee here taped the conversations which he permissibly overheard, we find, as the Fifth Circuit did in *Simpson*, 490 F.2d at 809, to be a distinction without a difference.

The extension phone exemption was not applicable in the Sixth Circuit case, *United States v. Jones, supra*. In *Jones*, the defendant's wife had left the marital home and established her own, separate residence.

The defendant entered his estranged wife's home and placed a recording device on her telephone. Through this means, the defendant intercepted not only the target conversations between his wife and her lover, but also all other incoming and outgoing calls. Similarly, in *United States v. Schrimsher*, 493 F.2d 848 (5th Cir. 1974), the defendant hid for five days under the house of his lover (who was also the mother of his child) and electronically intercepted and taped all of her telephone conversations. The defendants in *Jones* and *Schrimsher* thus invaded the privacy of innumerable persons, known and unknown. This invasion removed those two cases from the province of mere domestic conflicts, and the Sixth and Fifth Circuits correctly held that the federal wiretap statutes proscribed the respective defendants' alleged conduct.[6]

The facts in the instant case, by contrast, present a purely domestic conflict—a dispute between a wife and her ex-husband over the custody of their children—a matter clearly to be handled by the state courts. We do not condone the husband's activity in this case, nor do we suggest that a plaintiff could never recover damages from his or her spouse under the federal wiretap statute. We merely hold that the facts of this case do not rise to the level of a violation of that statute.

Because of this holding, we do not need to reach appellee's argument that he did not violate the statute because his eight year old daughter consented to his interception of her telephone conversation with her mother.[7] We likewise need not reach ap-

---

5. The facts in this case are nothing like those in *United States v. Harpel*, 493 F.2d 346 (10th Cir. 1974), where the court held that a policeman's interception of a fellow officer's conversation was not "in the ordinary course of its business". To the extent that the *Harpel* court held more broadly that no use of an extension phone without consent would be "in the ordinary course of its business", we disagree. Such an interpretation would render the extension phone exemption meaningless, since interceptions which have the consent of one of the parties to the conversation are already explicitly exempted from coverage by the Act in 18 U.S.C. § 2511(2)(c) and (d).

6. It is significant to note that *Jones* and *Schrimsher*, unlike *Simpson* and the instant case, were criminal prosecutions rather than civil damage actions brought pursuant to 18 U.S.C. § 2520.

7. 18 U.S.C. § 2511(2)(d) provides an explicit exemption for interceptions which are consented to by one of the parties to the intercepted conversation:

"(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication . . . where one of the parties to the communication has given prior consent to such interception . . . ."

pellee's alternate argument that if his daughter lacked the capacity to consent, then he, as her lawful guardian, consented for her.

The dismissal of the complaint is affirmed.