944 F.2d 1534
 60 USLW 2145
 Brent K. NEWCOMB, Plaintiff-Appellant,
v.
Nancy J. INGLE, Individually and as Assistant County
Attorney of the County of Crawford, State of
Kansas; Jean A. Mackey; Howard Q. Day,
Defendants-Appellees.
 No. 90-5068.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 28, 1991.
 
 Brent K. Newcomb, pro se.
 Frederick R. Smith, Pittsburg, Kan., for defendant-appellee Nancy J. Ingle.
 Vernon D. Grassie, Girard, Kan., for defendants-appellees Jean A. Mackey and Howard Q. Day.
 Before ANDERSON and TACHA, Circuit Judges, and KANE,* District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Plaintiff Brent Newcomb appeals from an order of the district court granting defendants' motions for summary judgment.[1]
 
 
 2
 Defendant Jean A. Mackey, with the help of her father, defendant Howard Q. Day, intercepted and recorded telephone conversations of her minor son Brent, within her own home without Brent's knowledge or consent. Brent's parents were divorced at the time, and Mackey had custody of Brent and his younger brother.
 
 
 3
 In one instance, Mackey recorded a conversation in which Brent's father, Harold Newcomb (Newcomb), instructed Brent and his brother as they set fire to their home. Thereafter, Mackey told a fire investigator of the existence of the tapes. After the tapes were recovered, Mackey sent them to defendant Nancy Ingle, an assistant county attorney. Based on the recorded conversation, Ingle brought criminal charges against Newcomb resulting in a conviction. In juvenile court, Newcomb stipulated to the severance of his parental rights. All charges against Brent were dismissed after Newcomb and Mackey stipulated to the designation of Brent and his brother as children in need of care.
 
 
 4
 Upon reaching majority, Brent brought this suit alleging violations of 18 U.S.C. §§ 2510-2520, 42 U.S.C. § 1983, and the first, fourth, fifth, sixth, and fourteenth amendments. Brent alleged that Ingle intercepted conversations between him and Newcomb, unlawfully arrested him, denied him counsel, forced him to sign away his rights, and incarcerated him. Brent also alleged that Mackey and Day unlawfully installed the wiretap device; disclosed the contents of Brent's conversations with Newcomb to friends and relatives; and, on the day of the fire, intercepted the conversation "for the purpose of commiting (sic) criminal or tortuious (sic) act." Rec. Vol. I., No. 1 at 10.
 
 
 5
 Defendants filed motions for summary judgment which the district court granted. The court held that Brent had failed to prove any causal connection between the recordings and his alleged injury: "What happened to you was brought about because of the actions that you and your brother took, that was the source of your problem or any damage that occurred to you, not the fact that your mother recorded those conversations." Rec.Supp. Vol. I at 38. The court found "that reasonable men and women could not differ, that there is totally lacking the willfulness of intentional wrongdoing or reckless disregard of known legal duty that is a requisite to the willfully component of Section 2511 of Title 18." Id. at 40. The court held that Ingle had acted at all times within the confines of her official duties and did not in any way act in a malicious manner. Therefore, Ingle was entitled to qualified immunity.
 
 
 6
 The issue here is whether Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, applies in a situation such as this where a minor child sues his custodial parent for telephone interceptions made within the family home. Title III makes it unlawful for any person to "willfully intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any wire or oral communication." 18 U.S.C. § 2511(1)(a).[2] A civil cause of action is provided by 18 U.S.C. § 2520.
 
 
 7
 No cases address the situation we have here. The closest analogy is where spouses have tapped one another,[3] but that is still qualitatively different from a custodial parent tapping a minor child's conversations within the family home.
 
 
 8
 We hold that the interception at issue here is not reached by Title III. The interception of a family member's telephone conversations by use of an extension phone in the family home is arguably permitted by a broad reading of the exemption contained in 18 U.S.C. § 2510(5)(a)(i).[4] There is no persuasive reason why Congress would exempt a business extension and not one in the home. The difference between listening on the extension and tapping the line within the home in the context here is not material. "[W]e think the (5)(a)(i) exemption is indicative of Congress's intention to abjure from deciding a very intimate question of familial relations, that of the extent of privacy family members may expect within the home vis-a-vis each other." Simpson, 490 F.2d at 809.[5] Further, because no violation of Title III by Mackey is present, no violation by Day or Ingle can be established.
 
 
 9
 Brent's allegations against Ingle under 42 U.S.C. § 1983 do not support a holding of liability under that section. Although unclear, it appears from Brent's complaint that he is complaining about Ingle's decision not to prosecute him after charges had been filed. Brent does not dispute Ingle's assertions that because of his parents' stipulations the tapes were not used in any juvenile court proceedings. Ingle decided not to prosecute Brent and all charges were dropped as a result of the stipulations. Ingle is entitled to absolute immunity from liability on that decision. See Meade v. Grubbs, 841 F.2d 1512, 1532 (10th Cir.1988). Ingle is also entitled to absolute immunity for her actions taken prior to deciding not to prosecute, such as reviewing and evaluating the tapes. See Id.
 
 
 10
 Likewise, no action under section 1983 lies against Mackey and Day.
 
 
 11
 [I]n order to hold a private individual liable under § 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State.
 
 
 12
 Lee v. Town of Estes Park, 820 F.2d 1112, 1114 (10th Cir.1987). No such showing has been made here. Mackey and Day's action in installing the wiretap and Mackey's actions in recording the conversations were taken without the knowledge or aide of any state actor.
 
 
 13
 Brent alleged violations of the first, fourth, fifth, and sixth amendments. Construing Brent's complaint liberally, see Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972), Brent has failed to state a claim regarding any alleged constitutional violations under the facts presented.
 
 
 14
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 *
 Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 The statute has since been amended to substitute the word "intentionally" for the word "willfully." We proceed under the statute as in effect at the time of the alleged violation
 
 
 [3]
 The circuits are split on this issue. Compare Anonymous v. Anonymous, 558 F.2d 677 (2d Cir.1977); Simpson v. Simpson, 490 F.2d 803 (5th Cir.), cert. denied, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); with Kempf v. Kempf, 868 F.2d 970 (8th Cir.1989); Pritchard v. Pritchard, 732 F.2d 372 (4th Cir.1984); United States v. Jones, 542 F.2d 661 (6th Cir.1976)
 
 
 [4]
 18 U.S.C. § 2510(5)(a)(i) provides that:
 "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than--
 (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business;....
 
 
 [5]
 While comments made during the legislative process are not in any sense controlling, nevertheless our holding above is reflective of what appears to be the general understanding of those involved in the legislative process regarding the scope of the statute in situations such as that present here. See, e.g., Anonymous, 558 F.2d at 679 (quoting from the Hearings on the Anti-Crime Program Before Subcomm. No. 5 of the House Judiciary Comm., 90th Cong., 1st Sess. 901 (1967): "I take it nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem." Comment by Professor Herman Schwartz testifying for the A.C.L.U.)