**Lynn Ann SCHEIB, Benjamin Grosse, a minor, by Lynn Ann Scheib, his next friend, and Carl Scheib Plaintiffs,**

**v.**

**Joan C. GRANT, Burton F. Grant, and Dorothy B. Johnson, Defendants.**

No. 92 C 0513.

United States District Court,
N.D. Illinois, E.D.

Feb. 11, 1993.

Aaron S. Wolff, Chicago, IL, for plaintiffs.

George B. Collins, Collins & Bargione, Dorothy Bertram Johnson, Johnson and Associates, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Lynn Ann Scheib, Benjamin Grosse (a minor) and Carl Scheib bring this two-count complaint against Joan C. Grant, Burton F. Grant and Dorothy B. Johnson, alleging violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521, and of the Illinois Eavesdropping Statute, Ill.Rev.Stat. ch. 38, ¶¶ 14–1 *et seq.* Presently before the court is Joan and Burton Grant's motion for summary judgment. For the reasons set forth below, we grant the Grants' motion for summary judgment. Additionally, we *sua sponte* grant summary judgment on behalf of defendant Dorothy B. Johnson.[1]

### I. Summary Judgment Standard

■ Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

### II. Background

This action stems from a removal and custody proceeding before Judge Moshe Jacobius of the Circuit Court of Cook County. After her divorce from James Grosse in 1982, plaintiff Lynn Scheib was granted sole custody of their son, Benjamin Grosse. In January of 1991, Lynn Scheib informed her former husband, James Grosse, that she intended to remarry and, consequently, planned to move their son Benjamin from Illinois to Pennsylvania. Recognizing the need to modify the existing visitation schedule, and hoping to avoid filing a formal removal petition, Lynn proposed to James terms for a new visitation schedule. However, neither James Grosse nor his attorneys, defendants Joan and Burton Grant, responded to Lynn's proffered resolution. Rather, on February 11, 1991, James Grosse filed in the Circuit Court of Cook County an emergency motion for injunctive relief, seeking to prohibit removal of Benjamin pending a proper removal proceeding. Subsequent to James Grosse's request for injunctive relief, Lynn filed a petition for removal. James countered with a motion to strike the petition and a cross petition for custody. Defendant Dorothy Johnson was appointed as Benjamin's guardian ad litem ("GAL") in connection with the custody and removal proceeding.

After lengthy negotiation, the parties reached a global settlement, such agreement reduced to writing and signed by all parties on June 19, 1991. However, rather than immediately entering judgment based on the settlement agreement, Judge Jacobius scheduled a prove-up hearing. In the interim and pursuant to the settlement agreement, Lynn Scheib left Illinois for Pennsylvania. Benjamin remained in Illinois with James Grosse, with whom Benjamin was scheduled to reside until approximately August 5, 1991.

During his residence with his father, Benjamin received calls from, and placed calls to, his mother, Lynn Scheib. In at least 60 to 75% of these conversations, Benjamin used a cordless phone in James Grosse's house. At

---

1. The Grants also have filed motions to strike the affidavits of Benjamin Grosse and Peter T. Wolff, filed in opposition to the motion for summary judgment. In that the substance of these affidavits do not create issues of material fact sufficient to withstand the instant motion for summary judgment, we summarily deny the motions to strike.

the time, James Grosse had three telephones in his home. According to James, Benjamin became very upset after several conversations with his mother. Thus, using a telephone answering machine attached to an extension phone, James Grosse recorded at least two conversations between Benjamin and Lynn. James Grosse did not overhear these conversations at the time they occurred, but subsequently heard their content by listening to the recordings after the fact. Claiming that the tapes prove that Lynn Scheib was the cause of Benjamin's emotional distress, James Grosse took the tapes to Joan Grant for legal advice. After listening to the tapes, Joan Grant purportedly formed the opinion that Benjamin's welfare was in jeopardy. As such, she promptly informed Benjamin's GAL, Dorothy Johnson, of the tapes' content.

On July 24, 1991, Lynn Scheib filed a motion in limine in the Circuit Court of Cook County to prevent James Grosse, his attorneys and the GAL from introducing the tape recordings at the prove-up hearing. The Grants, as attorneys for James Grosse and the GAL opposed the motion and vigorously sought to have the tapes allowed into evidence. Prior to, and in connection with, the motion in limine, the Grants and Dorothy Johnson disclosed alleged portions of the tape recordings to each other, to other persons and to Judge Moshe Jacobius. On August 2, 1991, Judge Jacobius granted the motion in limine, seemingly on the basis that the recordings violated the Illinois Eavesdropping Statute. However, the ruling was never incorporated into a formal written order, as the parties had reached settlement regarding the underlying case. On August 5, 1991, Judge Jacobius entered an agreed order, retroactive to June 19, 1991, resolving all underlying issues in the custody and removal action. Before entering this order, Judge Jacobius conducted a prove-up hearing, at which Lynn Scheib was asked and answered:

Q. One more just to make it crystal clear. You have no intention of today or in the future doing anything or having anyone on your behalf do anything to criminally or civilly prosecute Mr. Grosse for any alleged matters in connection with any tape recordings that may have been made as a result of these proceedings?

A. No. I'm not going to prosecute Jim.

Q. And you don't intend to have anyone else prosecute him. Is that your intention?

A. Nobody is going to prosecute Jim.

True to her word, Lynn Scheib did not "prosecute" James Grosse in connection with the tape-recorded conversations. Rather, she, Benjamin Grosse and Carl Scheib filed this civil action against James Grosse's attorneys, Joan and Burton Grant, and Dorothy Johnson, alleging violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510–2521, and of the Illinois Eavesdropping Statute, Ill.Rev.Stat. ch. 38, ¶¶ 14–1 et seq.

### III. Discussion

#### A. Title III

Title III prohibits any person from "intentionally disclosing[ing], or endeavor[ing] to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(c) (Supp.1992). A civil cause of action is provided under 18 U.S.C. § 2520, which states in part: "Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate."

Portraying the recorded conversations as "interspousal wiretaps," plaintiffs contend that Title III provides them with a federal remedy against the Grants and Johnson. Indeed, the majority of courts addressing the issue have held that, in the absence of an explicit exception for electronic surveillance by one spouse directed against another, Title III reaches interspousal wiretapping. See *Heggy v. Heggy*, 944 F.2d 1537, 1538–41 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992);

*Kempf v. Kempf,* 868 F.2d 970, 973 (8th Cir.1989); *Pritchard v. Pritchard,* 732 F.2d 372, 374 (4th Cir.1984); *United States v. Jones,* 542 F.2d 661, 673 (6th Cir.1976); *Heyman v. Heyman,* 548 F.Supp. 1041, 1044–47 (N.D.Ill.1982). *But see Simpson v. Simpson,* 490 F.2d 803, 810 (5th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). However, the undisputed facts set forth in the instant case portray a situation distinguishable from the typical case of interspousal wiretapping. Rather than electronic surveillance directed by one spouse at another, we are confronted with a parent who recorded the conversations of a minor child while that child resided in the parent's home. Benjamin, of course, was not talking to himself on the telephone. Nonetheless, the mere fact that the taped conversations were between Benjamin and his mother, James Grosse's former spouse, does not alter the complexion of James Grosse's actions.

We have been able to locate, and the parties have cited, only two cases in which the present situation was confronted. *See Newcomb v. Ingle,* 944 F.2d 1534 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 903, 116 L.Ed.2d 804 (1992); *Anonymous v. Anonymous,* 558 F.2d 677, 679 (2d Cir.1977). The courts in both *Newcomb* and *Anonymous* addressed the following issue: Does Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, apply to situations where a parent intercepts a minor child's telephone conversation via an extension phone within the family home. *Newcomb,* 944 F.2d at 1535; *Anonymous,* 558 F.2d at 677. Drawing upon the extension phone exemption set forth in 18 U.S.C. § 2510(5)(a)(i), both courts answered the question negatively. Section 2510(5)(a)(i) provides in relevant part:

> (5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral or electronic communication other than—
>
> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by

the subscriber or user in the ordinary course of its business....

Both the Second and Tenth Circuits held that, unlike the typical circumstance of interspousal wiretapping, the interception of a minor child's telephone conversations by use of an extension phone in the family home is permitted by a broad reading of the exemption in § 2510(5)(a)(i). *Newcomb,* 944 F.2d at 1536; *Anonymous,* 558 F.2d at 679. "There is no persuasive reason why Congress would exempt a business extension and not one in the home." *Newcomb,* 944 F.2d at 1536. In support of their respective holdings, both courts noted that the legislative history of Title III revealed that Congress considered the very problem of a parent eavesdropping on a minor child within the family home. Indeed, as pointed out by the Second Circuit, the language "ordinary course of [the user's] business" was added to the House bill only after Professor Herman Schwartz testified that he feared that the original version of the bill would permit policemen and private intruders to enter others' homes and listen in on extension phones without penalty. *Anonymous,* 558 F.2d at 679. Professor Schwartz, however, did not recommend deleting the extension phone exemption altogether. To be sure, Professor Schwartz stated: "Now, we can see in certain circumstances where [the exemption] makes some sense. I take it nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem." Hearings on the Anti-Crime Program Before Subcomm. No. 5 of the House Judiciary Comm., 90th Cong., 1st Sess. 989 (1967). Both the Second and Tenth Circuits found this statement by Professor Schwartz reflective of "the general understanding of those involved in the legislative process regarding the scope of the statute" in situations involving parental eavesdropping on a minor child via an extension telephone. *Newcomb,* 944 F.2d at 1536 n. 5; *Anonymous,* 558 F.2d at 679.

■ In the instant case, from his own home—where Benjamin was residing at the time—James Grosse recorded his minor son's phone conversations from an extension phone. Finding the rationale set forth in both *Newcomb* and *Anonymous* persuasive,

we hold that Title III does not reach James Grosse's conduct, however wise such conduct may be. The fact that Grosse taped the conversations, as opposed to merely listening in, is "a distinction without a difference." *Anonymous,* 558 F.2d at 679. In the absence of a violation of Title III by James Grosse, no violation for unlawful disclosure by the Grants or Johnson can be established. *See Newcomb,* 944 F.2d at 1536. Accordingly, we grant the Grant's motion for summary judgment on Count I of plaintiffs' complaint. Further, we *sua sponte* grant summary judgment on Count I on behalf of Dorothy Johnson.

B. The Illinois Eavesdropping Statute

 Count II of plaintiffs' complaint sets forth a claim under the Illinois Eavesdropping Statute, Ill.Rev.Stat. ch. 38, ¶¶ 14–1 *et seq.* Paragraph 14–2 provides in relevant part:

A person commits eavesdropping when he ... [u]ses or divulges, except as authorized by this Article or by Article 108A or 108B of the "Code of Criminal Procedure of 1963," approved August 14, 1963, as amended, any information which he knows or reasonably should know was obtained through the use of an eavesdropping device.

Ill.Rev.Stat. ch. 38, ¶ 14–2(b) (Supp.1992). A civil remedy to injured parties is provided in paragraph 14–6, which explicitly grants the court the discretion to award punitive damages.[2] *Id.* ¶ 14–6(1).

 Assuming for the sake of the present motion that the Grants and Johnson have committed the offense of eavesdropping as defined in the Illinois Eavesdropping Statute, each defendant nonetheless is entitled to summary judgment. Contrary to plaintiffs' assertion, the cause of action set forth in

Count II, being provided by state law, may be subverted by overriding state policy. For example, it is well established that attorneys are absolutely immune from liability for defamatory statements that are reasonably related to the subject of ongoing litigation. *See Auriemma v. Montgomery,* 860 F.2d 273, 277 (7th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989); *McGrew v. Heinold Commodities, Inc.,* 147 Ill.App.3d 104, 114, 100 Ill.Dec. 446, 476, 497 N.E.2d 424, 454 (1st Dist.1986). Driving this rule is the overriding public policy that "the needs of litigants and their advocates in the judicial process require that advocates be able to vigorously present their clients' cases without having to fear being sued." *Auriemma,* 860 F.2d at 277. The same rationale which would immunize defendants from liability for defamation must also absolve them from liability under the Illinois Eavesdropping Statute.

In the instant case, defendants' conduct of disclosing portions of the taperecorded conversations was intimately associated with the ongoing custody and removal proceeding in the Circuit Court of Cook County. The unique roles that attorneys perform as advocates and GALs in such judicial proceedings mandate that they be able to participate zealously without intimidation or harassment. Most significant to our conclusion that defendants are entitled to absolute immunity for the alleged disclosures, although subject to abuses, there are sufficient safeguards within the judicial process to protect litigants from the type of overzealousness presently alleged. *Cf. Auriemma,* 860 F.2d at 279 (attorneys not entitled to absolute immunity for extra-judicial investigation because such investigation is not subject to the rules of discovery and, falling outside the judicial process, cannot be halted by the trial court). Included in the trial court's arsenal to com-

---

2. We note that the court possesses jurisdiction over this claim on the basis of the parties' diversity of citizenship. Despite the fact that plaintiffs have not plead actual damages in excess of $50,-000, we must consider their claim for punitive damages in determining the jurisdictional amount, such damages being available for under Illinois law. *See Sharp Elec. Corp. v. Copy Plus, Inc.,* 939 F.2d 513, 515 (7th Cir.1991). While we believe that any award in excess of $50,000

would be excessive and likely set aside for that reason, such a conclusion cannot " 'be judicially made before [the] verdict [is] rendered.' " *Bell v. Preferred Life Society,* 320 U.S. 238, 243, 64 S.Ct. 5, 7, 88 L.Ed. 15 (1943) (quoting *Barry v. Edmunds,* 116 U.S. 550, 565, 6 S.Ct. 501, 509, 29 L.Ed. 729 (1886)); *Sharp Elec. Corp.,* 939 F.2d at 515. Accordingly, we must exercise jurisdiction over Count II of plaintiffs' complaint.

bat such abusive conduct is suppression of the disclosed evidence and, in extreme cases, disciplinary sanctions. Consequently, the Grants' motion for summary judgment on Count II is granted, and we *sua sponte* grant summary judgment on behalf of Johnson.

### IV. Conclusion

For the reasons set forth above, we grant the Grants' motion for summary judgment, and *sua sponte* grant summary judgment on behalf of defendant Dorothy Johnson. It is so ordered.