**Samuel B. POLLOCK, Jr. and Laura Pollock, Plaintiffs,**

v.

**Sandra T. POLLOCK, Oliver H. Barber, Jr., and Luann C. Glidewell, Defendants.**

**Civil Action No. 3:95CV–797–S.**

United States District Court, W.D. Kentucky.

May 22, 1997.

---

Samuel Manly, Louisville, KY, for plaintiffs.

Allen K. Gailor, Louisville, KY, for defendants.

### MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the court on the defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The plaintiffs, Samuel B. Pollock Jr. and his wife Laura, seek damages and injunctive relief for the defendants' alleged violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521 (the federal wiretapping statute). For the reasons explained below, the defendants' motion will be granted by separate order.

We treat this motion as one for summary judgment pursuant to Fed.R.Civ.P. 56, rather than under Rule 12(b)(6), because both parties' briefs include and rely on extraneous material. *See* Fed.R.Civ.P. 12(b). Rule 56(c) provides that summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is appropriate where there is no genuine issue of material fact in the case which requires a trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### FACTS

This case is about domestic wiretapping. Sandra Pollock is alleged to have unlawfully tape-recorded conversations between her daughter (Courtney) and the plaintiffs (Samuel Pollock and Laura Pollock). Sandra and her lawyers, Oliver H. Barber Jr. and LuAnn C. Glidewell, are also accused of unlawfully disseminating these recordings to third-parties.

Samuel and Sandra were married in 1977 and had three children: Courtney Pollock (now 16), Robert Pollock (now almost 13), and Ian Pollock (now 10). Samuel and Sandra separated in 1992, and their divorce became final in 1993. The final divorce decree granted Sandra custody of all three children. After the divorce, Samuel married Laura. In 1995, during the pendency of an appeal from the Jefferson Circuit Court's property and support decrees, Sandra taped certain conversations between (a) Courtney and Samuel and (b) Courtney and Laura. See Amended Complaint, ¶ 10A–14B.

Sandra maintains that she taped the conversations out of concern for her daughter's well-being. Specifically, Sandra claims that "the psychological and emotional pressure which she believed was being put upon Courtney was detrimental to Courtney and perhaps rose to the status of abuse or emotional harm or injury." Affid. of Sandra Pollock, ¶ 6. Sandra claims further that she became alarmed at the contents of the conversations she had taped, and disclosed the contents of the tapes to her attorneys, Barber and Glidewell. Barber and Glidewell, in turn, disclosed the contents of the tapes to the Crimes Against Children Unit ("CACU"), a joint task force operated by the Louisville Division of Police and Jefferson County Police Department. The CACU then disclosed the tapes' contents to the Hon. Geoffrey P. Morris, who had presided over the Pollock's divorce.

Counts 1–5 of the plaintiffs' Amended Complaint allege that Sandra violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting telephonic communications between two parties without either party's consent. Counts 6–11 allege that Sandra, Barber, and Glidewell violated 18 U.S.C. § 2511(1)(b-c) by intentionally using and disclosing the contents of these communications to third-persons. The Amended Complaint also alleges a violation of the right of privacy under Kentucky common law. Amended Complaint, ¶ 13. Both Samuel and Laura seek from each defendant the greater of actual damages or statutory damages ($100 a day for each day of violation, with a $10,000 maximum per 18 U.S.C. § 2520(b)(2)). The plaintiffs also seek costs and attorneys' fees expended herein and a permanent injunction prohibiting Sandra from intentionally intercepting additional telephone communications and prohibiting all the defendants from disclosing or using the contents of recordings already-made. See Amended Complaint at 12–13.

### DISCUSSION

In this case, the plaintiffs allege that Sandra Pollock and her attorneys violated Title III when (1) Sandra taped conversations between Courtney and the plaintiffs; (2) Sandra disclosed these conversations to her attorneys; and (3) Sandra and her attorneys disclosed these conversations to the CACU. A claim under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 can be made against any person who

(a) intentionally intercepts ... the contents of any wire, oral, or electronic communication;

(b) intentionally uses ... the contents of any wire, oral, or electronic communication;

(c) (i) intentionally discloses ... to any person the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection....

18 U.S.C. § 2511(1). There appears to be no dispute that Sandra intentionally intercepted the phone calls or that the defendants intentionally disclosed the contents thereof. Instead, this motion turns on whether Sandra's interception of the phone calls falls under a statutory exception to Title III liability.

### I. The Interception

Conversations intercepted with the consent of either of the parties are explicitly excepted from Title III liability:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication *or where one of the parties to the communication has given prior consent to such interception* unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added). Sandra argues that the taping of the phone calls was done with her children's consent—not their actual consent, but *vicarious* consent by Sandra herself acting on behalf of her minor children. We are thus faced with the following issue: Whether a parent's vicarious consent alone qualifies for the statutory "consent" exception in § 2511(2)(d). Sandra argues that vicarious consent does qualify for the exception, and we agree.

### A. The "Extension Telephone" Exception of § 2510(5)(a)(i)

■ Before addressing the vicarious consent issue, we pause to note that the "extension telephone" exemption of § 2510(5)(a)(i) does not aid Sandra in this case. Section 2510, titled "Definitions," expressly exempts from the coverage of the wiretapping statute

any telephone or telegraph instrument, equipment or facility or any component thereof ... being used by the subscriber or user in the ordinary course of its business ...

From this language, some circuits have held that the § 2510(5)(a)(i) exemption was intended to cover tape recorders attached to extension phones in the home. *See, e.g., Simpson v. Simpson,* 490 F.2d 803 (5th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); *U.S. v. Harpel,* 493 F.2d 346 (10th Cir.1974); *Anonymous v. Anony-*mous, 558 F.2d 677 (2d Cir.1977); *Epps v. St. Mary's Hosp. of Athens, Inc.,* 802 F.2d 412 (11th Cir.1986); *Newcomb v. Ingle,* 944 F.2d 1534 (10th Cir.1991), *cert. denied,* 502 U.S. 1044, 112 S.Ct. 903, 116 L.Ed.2d 804 (1992). Thus, many courts have inferred a "domestic relations" exemption from the wiretapping statute where one member of a household places recording equipment on an extension-telephone within the household.

But in *U.S. v. Murdock,* 63 F.3d 1391, 1393 (6th Cir.1995),[1] the Sixth Circuit expressly rejected the line of cases cited above. Instead, the court held that the statute provided no safe-harbor for the sort of extension-phone wiretapping that we find in the instant case. The court wrote:

We find better reasoning in three recent decisions [which held that a tape recorder connected to any extension phone does not qualify for the exemption]. We shall follow [these decisions of the First, Fourth, and Eighth Circuits] rather than the decisions of the Second, Fifth, Tenth and Eleventh Circuits relied upon by the district court.

*Id.* at 1394 (citations omitted). The *Murdock* court noted that "the Sixth Circuit does not recognize a spousal immunity or exception to Title III. The area of domestic disputes ... has been a fertile field for civil actions alleging a violation of Title III." *Id.* at 1397 (citations omitted). Thus, the *Murdock* case clearly rejects of any sort of blanket spousal or parental exemption from Title HI liability based on § 2510(5)(a)(i). *See also U.S. v. Jones,* 542 F.2d 661 (6th Cir.1976) (no spousal exception to Title III liability).

Recognizing the Sixth Circuit's rejection of *Newcomb, Anonymous,* and *Simpson* is important because the "extension phone" cases decided in those circuits which recognize those cases' interspousal immunity are of little or no value here. Thus, cases such as *Lizza v. Lizza,* 631 F.Supp. 529 (E.D.N.Y. 1986), *Janecka v. Franklin,* 684 F.Supp. 24 (S.D.N.Y.1987), *aff'd,* 843 F.2d 110 (2d Cir. 1988), *Perfit v. Perfit,* 693 F.Supp. 851

---

**1.** In *Murdock,* the defendant had been convicted after the trial court admitted into evidence incriminating tape-recordings made by Murdock's estranged wife. The tapes ended up in the hands of the county prosecuting attorney, and, ultimately, federal agents. On appeal, the Sixth Circuit held that the evidence was inadmissible because it was obtained in violation of Title III.

(C.D.Cal.1988), and others—all cited by the defendants—are unhelpful.

## B. Vicarious Consent

■ Sandra bases her motion to dismiss on the notion of vicarious consent. Sandra argues that she has the power to consent to taping *on behalf of* her minor child of whom she had custody and the responsibility for care. There is no suggestion that the children knew of or acquiesced in the taping, so "implied" consent is not an issue. Rather, the question is whether vicarious consent qualifies for § 2511(2)(d)'s consent exception.

In the large body of Title III jurisprudence that has developed, there is a paucity of authority on the question of vicarious consent. However, we have found two well-reasoned opinions that have considered this issue: *Thompson v. Dulaney*, 838 F.Supp. 1535 (D.Utah 1993), and *Silas v. Silas*, 680 So.2d 368 (Ala.Civ.App.1996).

■ In *Thompson*, a divorced husband sued his ex-wife, her parents, and her attorneys and experts for violations of the federal wiretapping law. The ex-wife raised the defense of vicarious consent. The court first noted that "[i]t is clear from the case law that Congress intended the consent exception to be interpreted broadly," citing *Griggs–Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990). The court ultimately held that vicarious consent does, indeed, qualify under the consent defense of § 2511(2)(d).[2]

The court pointed out that Utah law vests the legal custodian of a minor child with certain rights to act on behalf of that minor child. Utah Code Ann. § 78–3a–2(13); § 78–3a–2(14)(b) (holding guardian responsible for, *inter alia,* protecting the minor child). *Thompson,* 838 F.Supp. at 1544. The court accepted the mother's contention that vicarious consent would be proper if she recorded the conversations because she believed the father was interfering with her relationship with the children of whom she had custody. *Id.* The court then articulated the holding which we follow today:

> [A]s long as the guardian has a good faith basis that is objectively reasonable for believing that it is necessary to consent on behalf of her minor children to the taping of the phone conversations, vicarious consent will be permissible in order for the guardian to fulfill her statutory mandate to act in the best interests of the children.

*Id.* at 1544. The court cautioned that, while it was not announcing a *per se* rule approving of vicarious consent, the fact that the case involved "two minor children whose relationship with their mother/guardian was allegedly being undermined by their father" led to the conclusion that vicarious consent is permissible. *Id.* at 1544 n. 8.

In the instant case, Sandra has offered evidence (in the form of her affidavit) tending to show that she believed she was acting in the best interests of Courtney and the other children when she recorded the conversations. This evidence is sufficient, we believe, to allow a fact-finder to conclude that Sandra had a good faith, objectively reasonable basis to believe that such taping was necessary. In making this determination, we are mindful of the increasingly-difficult business of child-rearing in modern America, and believe that societal realities weigh into the calculus of "reasonableness" and "good faith." While we do not wish to be cited for the proposition that children do not share privacy rights such as those granted by Title III, we are confident that our holding today gives parents a wide berth to act for the good of their children and empowers them accordingly.

Having established the vitality of vicarious consent, the *Thompson* court went on to deny summary judgment because there was conflicting evidence as to what the mother's

---

**2.** One key fact highlighted by the *Thompson* court was that the *Thompson* children were ages 3 and 5. It is unclear whether the *Thompson* court viewed this fact as determinative, but it did point out that the "unique legal question" it was exploring was whether a guardian could "vicariously consent to the taping of phone conversations on behalf of minor children who are both incapable of consenting and who cannot consent in fact." *Thompson,* 838 F.Supp. at 1543. Thus, the court distinguished *legal* capacity to consent (i.e., of an age pre-majority) and *actual* capacity to consent (i.e., "capable of understanding the nature of consent and of making a truly voluntary decision to consent.") *Id.* Here, Courtney Pollock was 14 when her conversations were secretly recorded. Notwithstanding this distinction, Thompson is helpful to our determination here, and we are not inclined to view Courtney's own ability to actually consent as mutually exclusive with her mother's ability to *vicariously* consent on her behalf.

"purpose" in intercepting the communication. *Id.* at 1545. The mother, of course, argued that she had done it to protect the children, but the father countered with evidence that she had "continued taping the conversations several months after she concluded that the conversations were in fact 'innocuous.'" *Id.* Thus, the court was reluctant to grant summary judgment in favor of the mother.[3]

We find no such countervailing evidence offered by the plaintiffs that would eviscerate Sandra's vicarious consent defense here and preclude summary judgment. Sandra's affidavit clearly supports her claim that she acted to protect the welfare of her children in taping the conversations at issue. *See* Affid. of Sandra Pollock, ¶¶ 6, 8, 9. Moreover, it appears that Sandra ceased taping when she realized it was potentially violative of the federal wiretapping statute. *Id.,* ¶ 10. This evidence militates *against* the conclusion that Sandra taped "for the purpose of committing a criminal or tortious act." *See* 18 U.S.C. § 2511(2)(d) and note 3, *supra.*

For their part, the plaintiffs have offered no evidence tending to suggest that the vicarious consent defense is inappropriate here or that Sandra's "child welfare" contention is pretextual. The plaintiffs cannot simply point to the tension and bitterness among the parties and expect the court to leap to the conclusion that Sandra's motives in taping were improper. Faced with a properly-supported motion for summary judgment, the plaintiffs "may not rest upon the mere allegations or denials" of its pleadings. Fed. R.Civ.P. 56(e). Rather, Samuel and Laura

"must set forth specific facts showing that there is a genuine issue for trial." *Id.* They have not set forth specific facts and, as such, summary judgment is appropriate.

In *Scheib v. Grant,* 22 F.3d 149, 153 (7th Cir.1994), the plaintiff insisted that—even if a parent *can* tape his minor child's conversations out of concern for the child's welfare—there exists a genuine issue of material fact as to whether concern for the child's welfare was in fact the parent's purpose in taping the phone conversations. *Id.*[4] The plaintiff argued that a jury ought to decide whether the defendant recorded the conversation "because of a concern for [the child], or because of a desire to obtain information about his ex-wife Lynn." *Id.* at 155.

The *Scheib* court acknowledged that the burden of establishing a matter of intent is "always difficult," and summary judgement should be considered carefully in such cases. *Id.* (citing *Bronze Shields, Inc. v. New Jersey Dep't of Civil Serv.,* 667 F.2d 1074, 1087 (3d Cir.1981), *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982)). Nonetheless, "summary judgment will not be defeated simply because issues of motive or intent are involved, and is proper when the plaintiff fails to indicate any motive or intent to support plaintiff's position." *Morgan v. Harris Trust & Sav. Bank,* 867 F.2d 1023, 1026 (7th Cir.1989). The Seventh Circuit approved summary judgment, noting that the

> defendants have submitted evidence tending to show that James' concern for Benjamin was based on information that the child's conversations with his mother were

---

3. The "purpose" for taping is relevant because, under the statutory "consent" exception, otherwise valid consent is *not* a defense if the communication is intercepted "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Thus, if a defendant tapes conversations with a criminal or tortious motive, vicarious consent will not remove her from liability under the statute.

4. In *Scheib,* the court based its grant of the defendants' motion for summary judgment on the extension phone exception of § 2510(5)(a)(i). We have already noted that the Sixth Circuit disagrees with *Scheib* on the extension phone exception, so *Scheib* is not on all-fours with our decision here. Although we decide this case on grounds wholly different than the *Scheib* court, we find that court's discussion of the propriety of

summary judgment helpful. Moreover, we agree with another comment by the *Scheib* court:

> We cannot attribute to Congress the intent to subject parents to criminal and civil penalties for recording their minor child's phone conversations out of concern for the child's well-being.

*Id.* at 154 (quoting Testimony of Professor Herman Schwartz, Hearings on the Anti–Crime Program Before Subcomm. No. 5 of the House Judiciary Comm., 90th Cong., 1st Sess. 989 (1967) ("I take it no nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem.")). Like the *Scheib* court, Professor Schwartz spoke with regard to the extension-phone exception, not the "consent" exception. Nevertheless, these authorities would support our disposition here.

the source of his becoming upset. Under these circumstances, the plaintiffs had to do more to avoid summary judgment than to point out that Lynn was on the other line every time James recorded Benjamin's calls. Accordingly, we hold that James Grosse did not violate Title III in recording Benjamin's conversations with Lynn. *Id.* at 155.[5] In the instant case, the plaintiffs have produced no evidence to show that Sandra's "child welfare" claim is pretextual.

In *Silas v. Silas, supra,* a mother objected to the admissibility of certain tape-recorded conversations between her and her minor daughter, claiming that neither she nor the child consented to the recording. 680 So.2d at 369. The Alabama Court of Appeals adopted the reasoning of the *Thompson* court and held that

> a parent may give vicarious consent on behalf of a minor child to the taping of telephone conversations where that parent has a good faith basis that is objectively reasonable for believing that the minor child is being abused, threatened, or intimidated by the other parent.

*Id.* at 371. The court ruled that, as a matter of law, the father had a good faith, objectively reasonable basis for consenting on his child's behalf to the tape-recording of the conversations. *Id.* at 372.

■ While *Silas* adds nothing to *Thompson*'s analysis, it does reveal the willingness of courts to grant summary judgment under these circumstances. Contrary to the plaintiffs' arguments here, a jury question is not necessarily presented when a determination

must be made as to Sandra's motive. In light of the foregoing discussion, we believe that Sandra is entitled to raise the vicarious consent defense to Title III liability and, moreover, that the plaintiffs have offered no evidence tending to impeach her avowed purpose of taping—that she was acting in the best interests of the minor children of whom she had custody.[6] Therefore, we will grant Sandra's motion for summary judgment on the "interception" counts of the plaintiffs' Amended Complaint.

## II.  Disclosure and Use

■ In light of our ruling that Sandra's taping of the conversations is not actionable under Title III, we turn to the allegedly unlawful "use" and "disclosure" of those conversations by Sandra and her attorneys. Our opinion clearly reveals that the conversations were taped with the (vicarious) consent of one of the participants, Courtney Pollock. As such, 18 U.S.C. § 2511(c-d) are inapplicable, as they apply only to the disclosure and use of wire, oral, or electronic communications *unlawfully* obtained in violation of Title III. The finding that they were lawfully obtained is, *ipso facto*, a bar to their actionability under § 2511(c-d). Therefore, we will grant the defendants' motion for summary judgment as to those counts of the Amended Complaint alleging an unlawful use or disclosure.

## III.  Supplemental Jurisdiction

■ Thus, in light of the above discussions, we will grant the defendant's motion for summary judgment on all of the plaintiffs'

---

5. It should be noted, however, that the *Scheib* court expressly avoided deciding the case on the issue of vicarious consent. 22 F.3d at 155 n. 6.

6. We have identified one state-court case which held that, on its facts, one parent's vicarious consent did not qualify for the § 2511(2)(d) consent exception. In *West Virginia Dep't of Health and Human Resources ex rel. Wright v. David L., et al.,* 192 W.Va. 663, 453 S.E.2d 646 (1994), a father had taped conversations between his child and his ex-wife, not in his *own* house, but in his ex-wife's house, by having a tape-recorder secretly planted in the mother's home. The father argued the *Thompson* vicarious consent defense, which the West Virginia court rejected on the facts of the case. The *Wright* court was careful to note, however:

> We draw a distinction between the present situation and a situation in which a guardian, who lives with the children and who has a duty to protect the welfare of the children, gives consent on behalf of the children to intercept telephone conversations within the house where the guardian and children reside.

*Id.* at 654 n. 11. The *Wright* court did "not disagree with the reasoning in *Thompson.*" *Id.* at 654. Instead, the court distinguished its holding and *Thompson* on two facts: (1) in *Wright,* custody of the children had been vested in the *non*-taping parent; and (2) in *Wright,* the taping occurred in the *non*-taping parent's home. *Id.* We express no opinion on the validity of that court's ultimate holding, but we do point out that *Wright* did not take an approach *contra* to the one we take in the instant case.

federal Title III claims which had supported our original subject-matter jurisdiction under 28 U.S.C. § 1331. A district court may decline supplemental jurisdiction over state-law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Where all the federal claims are disposed of well before trial, it is appropriate for pendent state claims to be dismissed as well. *Irish Lesbian and Gay Organization v. Bratton,* 882 F.Supp. 315 (S.D.N.Y.1995), *aff'd* 52 F.3d 311. Therefore, we will also dismiss the plaintiffs' state-law privacy claim. We note, however, that this dismissal should have no preclusive effect on these state claims because it is not "on the merits." *See Fitzgerald v. Alleghany Corp.,* 882 F.Supp. 1433, 1436 (S.D.N.Y.1995).

In sum, we find that there are no genuine issues of material fact which would preclude a grant for summary judgment in favor of the defendants. Summary judgment will be granted by separate order on all of the plaintiffs' federal claims.